**4-167UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GEORGE TAYLOR, <br><br> Plaintiff, <br><br> v. <br><br> ANTHONY EGAN, et al., <br><br> Defendants. | No. 24 CV 167 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff George Taylor entered the DuPage County Courthouse with two pocketknives and a cell phone in his backpack. Deputy Sheriff Anthony Egan told Taylor that he could not bring in the prohibited items. The two men began arguing at the security screening area. Taylor hit Egan in the face with the backpack. Deputy Sheriff Peter Coolidge stepped in and tackled Taylor to the ground. Later, Deputy Rafael Osorio and other officers arrived on the scene. The parties dispute what happened after the tackle. Taylor brings suit under 42 U.S.C. § 1983 against defendants Egan and Coolidge for excessive force and failure to intervene in violation of the Fourth Amendment and against defendant Osorio for failure to intervene; a state-law battery claim against defendants Egan, Coolidge, and the Sheriff of DuPage County; and indemnification from DuPage County. For the reasons discussed below, summary judgment is granted in part, denied in part.

**I.  Legal Standard**

A motion for summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). I view all the facts and draw reasonable inferences in favor of the non-moving party to determine whether summary judgment is appropriate. *See Sullivan v. Flora, Inc.*, 63 F.4th 1130, 1141 (7th Cir. 2023).

## II. Local Rule 56.1 and Evidentiary Issues

Local Rule 56.1 "aims to make summary-judgment decisionmaking manageable for courts." *Kreg Therapeutics, Inc. v. VitalGlo, Inc.*, 919 F.3d 405, 415 (7th Cir. 2019). The moving party must file a supporting memorandum of law and statement of facts that demonstrates its entitlement to judgment as a matter of law. *See Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014); N.D. Ill. Local R. 56.1(a). The opposing party must file a supporting memorandum of law and response to the movant's statement of facts. N.D. Ill. Local R. 56.1(b)(1)–(2). The opposing party may provide a separate statement of additional facts. N.D. Ill. Local R. 56.1(b)(3)

Both statements of facts and additional material facts must consist of concise numbered paragraphs, supported by citations to specific pages in the evidentiary record. *See* N.D. Ill. Local R. 56.1(d)(1)–(2). The opposing party must cite specific, admissible evidence to dispute an asserted fact and concisely explain how the cited material controverts the asserted fact. N.D. Ill. Local R. 56.1(e)(3).

Taylor was represented by counsel but now proceeds pro se. [23].[1] Defendants filed a Local Rule 56.2 notice for unrepresented litigants explaining the summary judgment procedure. [41]; N.D. Ill. Local R. 56.2. Taylor did not file a memorandum of law, but he filed a 315-page response to defendants' motion for summary judgment. [51]. Twelve of those pages are responses to a portion of defendants' asserted facts, and the rest are exhibits. [51] at 296–308. Defendants ask that I strike the noncompliant filing, [52] at 2, but I construe Taylor's pro se filings liberally. *Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016).

Legal arguments in the statement of facts are typically disregarded. *See Cady v. Sheahan*, 467 F.3d 1057, 1060–61 (7th Cir. 2006). Taylor improperly injects legal arguments in his responses. [51] at 296–308 (¶¶ 25, 33, 42–43, 47, 49, 53–54, 67, 70–71).[2] To the extent possible, I construe those legal arguments as part of his response brief rather than factual responses.

Still, compliance with the Local Rules is required for pro se litigants. *See Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("[E]ven pro se litigants must follow procedural rules."). Taylor does not respond to most of defendants' facts. The following facts are supported by the record and deemed admitted: [42] ¶¶ 1–11, 13, 15, 18–19, 22, 24, 27, 29–30, 32, 34–40, 46, 48, 55, 59–60, 62–63, 68–69. Some of

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page number.

[2] Plaintiff did not file a separate response to defendants' statement of facts; paragraph citations refer to plaintiff's numbered responses in pages 296 to 308 of his filing. *See* [51] at 296–308.

3

defendants' asserted facts rest on characterizations of disputed video footage, so I disregard those facts and cite directly to the video footage. *See* [42] ¶ 50, 54, 65.

Taylor did not file a statement of additional facts, which, although not required, would have given him the opportunity to present his side of the story. *See* N.D. Ill. Local. R. 56.1(b)(3). For example, Taylor responds to defendants' fact about his possession of prohibited knives and a cell phone in the courthouse with additional facts about his lack of awareness and intentionality about the rules. *See* [51] ¶ 12. I disregard additional facts in Taylor's responses as improperly presented. *See* [51] at ¶¶ 12, 14, 16, 17, 20, 26, 49–50, 61.

Taylor also improperly asserts additional facts in his response related to his state-court battery conviction for striking Deputy Egan in the face. He claims that he pleaded guilty under duress, asserts self-defense based on fear of attack by Deputy Egan, and explains that he plans to expunge his conviction from his record. *See* [51] ¶¶ 28, 49, 51–52. Defendants object that Taylor's self-defense justification and battery claim are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). [52] at 4–7. A plaintiff may not pursue damages under § 1983 "on a theory irreconcilable with a conviction's validity, unless that conviction has been set aside." *Johnson v. Rogers*, 944 F.3d 966, 968 (7th Cir. 2019). Taylor's state-law battery and excessive-force claims rest on a theory that Deputies Egan and Coolidge used more force than reasonably necessary to arrest him; those claims are not barred by *Heck*. *See Gilbert v. Cook*, 512 F.3d 899, 901 (7th Cir. 2008) ("A contention that a guard struck back after being hit is compatible with *Heck*."). Taylor may not, however, use his claims in

4

federal court to introduce facts suggesting he was merely acting in self-defense by striking Deputy Egan first. Those facts support a narrative undermining his state-law battery conviction.[3] *See Tolliver v. City of Chicago*, 820 F.3d 237, 246 (7th Cir. 2016) (a plaintiff bringing an excessive-force claim is "confined to a version of the facts that does not undermine the conviction"). I ignore those facts. *See Gilbert*, 512 F.3d at 902 (a plaintiff may claim that "[defendants] violated my rights by injuring me, whether or not I struck first," but a court should use limiting instructions at trial to exclude any statements that depart from that narrative).

Several of Taylor's responses are unsupported by his own testimony or rely on improper characterization rather controverting defendants' asserted fact. For example, defendants cite Taylor's own testimony that Deputy Coolidge told him he could not bring knives or cell phones into the building. [42] ¶ 14; [42-3] at 20:6–14 ("Q. At some point, did somebody indicate to you that you could not bring cell phones or knives into the building? A. Yes. Q. Who was that? A. Deputy Coolidge."). Taylor responds by asserting that Deputy Coolidge never made any mention of pocketknives. [51] ¶ 14. The following facts are uncontroverted and deemed admitted: [51] ¶¶ 14, 20, 26, 71.

Put together, Taylor fails to respond or improperly responds to all of defendants' asserted facts. Because Taylor's deposition testimony describes his side

---

[3] Under Illinois law, "[a] person commits battery if he or she knowingly without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12–3(a). Self-defense is an affirmative defense to battery. *People v. Lee*, 213 Ill.2d 218, 224 (2004).

5

of the story and the video footage depicts the disputed events, I consider those exhibits alongside defendants' statement of facts instead of relying on Taylor's responses. Defendants' facts are deemed admitted to the extent they are supported by the record, but the burden remains with the defendants to show that they are entitled to judgment as a matter of law. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) ("[A] nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not, of course, automatically result in judgment for the movant.").

### III. Facts

A security camera in the lobby captured video footage of the following events. *See* [43].[4] There is no audio recording, so I recount Taylor's testimony about any statements between the parties.

At 10:34 a.m., George Taylor entered the lobby of the DuPage County Courthouse with a backpack and a plastic bag. [42] ¶¶ 9, 28. The backpack contained two knives and a cell phone; the plastic bag held documents. [42] ¶¶ 9, 24, 28. The courthouse prohibits cell phones and knives. [42] ¶ 13. Taylor placed his items on the security belt for the x-ray machine and walked through the metal detector. Deputy Peter Coolidge told Taylor that he could not bring cell phones or knives into the building. [42] ¶ 14. Deputy Anthony Egan told Taylor to "take the stuff and get it out of here. Go throw it in the trash or whatever you going to do with it, but it ain't coming

---

[4] Defendants submitted an exhibit of the security video footage with timestamps. [43] (second link). Plaintiff submitted the same video footage, zoomed in and without timestamps. [58] (first link). All timestamps are based on the original security footage.

6

in here." [42] ¶ 16; [42-3] at 21:12–15. After putting his jacket back on and picking up his items, Taylor turned to walk away and called Egan "an asshole." [42-3] at 22:4–12; [43] at 10:35:20. The two men began arguing across the security conveyor belt. [42] ¶¶ 18, 19.

Deputy Coolidge walked around the conveyor belt and approached Taylor's left side while Deputy Egan and Taylor continued to argue. [43] at 10:35:29–31. Egan and Taylor reached for the plastic bag at the same time, Taylor pulled the bag away, and the handle of the plastic bag tore off. [42] ¶¶ 25–26; [42-3] at 27:19; [43] at 10:35:33–35 (video footage depicting Deputy Egan throwing a piece of something white in the air). Deputy Egan told Taylor to "get the fuck out of here, [n-word]." [42] ¶ 27. Taylor struck Egan in the face with his backpack across the conveyor belt. [42] ¶ 28; [43] at 10:35:36. Within two seconds, Deputy Coolidge tackled Taylor to the ground. [42] ¶ 29; [43] at 10:35:37.

At this point, the parties dispute what came next and what the video footage depicts. Taylor recalled: landing on his right side, rolling to his back 10 seconds later, Coolidge letting him roll to his stomach another 10 seconds later, then Coolidge applying handcuffs about 15 seconds after Taylor was on his stomach. *See* [42] ¶¶ 30–31; [42-3] at 32:24–35:19. Coolidge ordered Taylor to "stay still" about forty seconds after the tackle. [42] ¶ 33. According to Taylor, Coolidge slammed Taylor's head into the ground three times while Taylor was on his side; pushed Taylor's head into the ground twice with his forearm (once when Taylor was on his back for about 5 seconds and again after he rolled onto his stomach for about 10 seconds); punched Taylor's

7

head three times while flipping Taylor from his back to his stomach; hit Taylor in the side with a knee; and hit Taylor three times in the body (once in the midsection on his right side and the other two in an area that he cannot recall). [42] ¶¶ 34–40. Taylor recalled that Deputy Egan was somewhere around his legs at the time. [42-3] at 48:17–21; [43] at 10:35:52 (video showing Deputy Egan behind Deputy Coolidge and holding down Taylor's legs).

At 10:36 a.m., Deputy Rafael Osorio and other officers arrived on the scene. *See* [43] at 10:36:30. After Deputy Coolidge applied handcuffs, Deputy Egan "grabbed [Taylor] by the neck" and "assisted" him to his feet. [42] ¶ 43; [42-3] at 49:5–14. Taylor recalled Egan "choking the back of [his] neck" and that his "neck was being squeezed." [42-3] at 49:24–50:22. Deputy Egan told him "[g]et the fuck over here" and pushed him "past some other officers, other deputies, and slam[med] [him] into the glass wall." [42-3] at 51:2–3, 52:4–6; [42] ¶ 44. Deputy Coolidge walked away. [42] ¶ 59. Deputy Osorio stood on Taylor's right side when Deputy Egan held Taylor against the glass wall. [42] ¶ 55; [43] at 10:36:58. Taylor testified that Osorio told Egan, "Let him go, we got him." [42] ¶ 61. Deputy Egan walked away. [42] ¶ 62. Taylor does not challenge any actions after that point. [42] ¶ 48.

Defendants say the video footage depicts Deputy Coolidge attempting to gain control of Taylor in order to handcuff him. [42] ¶ 54. Deputy Egan testified that he was attempting to gain control of Taylor's legs while Deputy Coolidge was handcuffing Taylor; Egan did not have a clear view of what Coolidge was doing on the ground. [42] ¶ 42. Egan testified that he placed Taylor against the wall in order to

8

gain compliance, but he did not squeeze or choke Taylor's neck at any time. [42] ¶¶ 65, 71.

Taylor brings an excessive-force claim against defendants Egan and Coolidge; a failure-to-intervene claim against defendants Egan, Coolidge, and Osorio; a state-law claim for battery against defendants Egan, Coolidge, and the Sheriff of DuPage County James Mendrick; and indemnification from DuPage County. [3] ¶¶ 96–113.

## IV. Analysis

### A. Excessive Force

The Fourth Amendment "guarantees citizens the right to be secure in their persons … against unreasonable ... seizures of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989). To determine what constitutes a "reasonable seizure" a reviewing court must examine the totality of the circumstances "from the perspective of a reasonable officer on the scene" paying "careful attention to the facts and circumstances of each case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. "The history of the interaction, as well as other past circumstances known to the officer… may inform the reasonableness of the use of force." *Barnes v. Felix*, 145 S.Ct. 1353, 1358 (2025).

This is an objective analysis, where the court must "balanc[e] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396. A court can look at each discrete use of force to see if it is justified by the circumstances.

9

*Dockery v. Blackburn*, 911 F.3d 458, 467 (7th Cir. 2018). An officer's subjective beliefs and motivations are irrelevant. *Horton v. Pobjecky*, 883 F.3d 941, 950 (7th Cir. 2018).

### 1. Deputy Coolidge's Use of Force

Taylor's excessive-force claim against Coolidge is based on: (1) slamming his head into the ground three times, (2) pushing his head into the ground twice, (3) three punches to the head; (4) a hit to the side with a knee; and (5) a hit to the midsection.[5] *See* [42] ¶¶ 34–40. Defendants contend that the video footage clearly contradicts Taylor's allegations of events.[6] The video does not show Deputy Coolidge lifting his arms up, pushing them down to slam Taylor's head, or punching Taylor in the head three times. [39] at 4–5.

Taylor sees it differently. He contends that the video does not show "all of the exact actions" and "[i]f you blink, you will miss things." [51] ¶ 53. Taylor says that Deputy Coolidge's arms are mostly blocked by Deputy Egan and the metal detector; the footage doesn't depict Taylor resisting arrest for the 40-or-so seconds that Coolidge is on top of Taylor. *See* [51] ¶ 54.

When video footage "firmly settles a factual issue," a court "will not indulge stories clearly contradicted by the footage." *Horton*, 883 F.3d at 944; *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion

---

[5] Plaintiff testified that he was hit three times in the body, but he cannot recall the other two times. [42] ¶ 40; [42-3] at 46:2–38:2.

[6] Defendants do not invoke qualified immunity in their opening brief. *See* [39] at 13–15.

10

for summary judgment."). Video footage "can eviscerate a factual dispute only when the video is so definitive that there could be no reasonable disagreement about what the video depicts." *Kailin v. Vill. of Gurnee*, 77 F.4th 476, 481 (7th Cir. 2023). Footage that is unclear, incomplete, or open to different interpretations create triable issues of fact. *See Horton*, 883 F.3d at 944.

The video footage does not clearly contradict Taylor's narrative about Deputy Coolidge's conduct. The security camera offers a limited perspective—Coolidge's and Egan's backs are turned away from the camera and their bodies block Taylor's upper body from view. *See* [43] at 10:35:38–36:55. Taylor's body is positioned between the two ends of the metal detector, which gets jostled around during the skirmish and further blocks a clear view. *See* [43] at 10:35:58–36:01. A little under a minute and a half passes between Coolidge's tackle and Egan lifting Taylor from the ground—Taylor's head is not visible in the frame for that entire period. *See* [43] at 10:35:38–36:55. About twenty seconds after the tackle, the video depicts movement in Coolidge's shoulders that could be consistent with Coolidge flipping Taylor from back to stomach or Taylor's account that Coolidge slammed and pushed his head to the ground. [43] at 10:35:58. Another twenty-four seconds after that, the video shows Coolidge lifting his left arm—the movement could be consistent with Coolidge applying handcuffs or Taylor's account that Coolidge punched his head and hit the side of his body. [43] at 10:36:22. The zoomed-in footage doesn't provide any better view of the skirmish. *See* [58] (first link). Without conclusive video evidence, a

11

reasonable jury could accept Taylor's account that Deputy Coolidge slammed, pushed, punched, and hit Taylor during the arrest.

Defendants argue that even if the footage supports Taylor's account, Deputy Coolidge's uses of force were reasonable under the circumstances to gain compliance and subdue Taylor.[7] *See* [39] at 14. An officer may use no more than minimal force on a suspect who is only passively resisting arrest. *See Turner v. City of Champaign*, 979 F.3d 563, 569 (7th Cir. 2020) ("Unlike when someone is passively refusing to move or follow lawful commands, the police may use significant force to subdue someone who is actively resisting lawful detention."); *Taylor v. City of Milford*, 10 F.4th 800, 808 (7th Cir. 2021) ("[C]ontinuing to apply unnecessary force against a civilian once he is already subdued may be an unreasonable use of force."); *Miller v. Gonzalez*, 761 F.3d 822, 829 (7th Cir. 2014) (suspect demonstrated only "passive resistance" when he was lying with his arms outstretched and obeying every order except for the order to put his hands behind his back). The "prohibition against significant force against a subdued suspect applies notwithstanding a suspect's previous behavior—including resisting arrest, threatening officer safety, or potentially carrying a weapon." *Miller*, 761 F.3d at 829.

The video footage doesn't clearly contradict Taylor's narrative of compliance. There isn't a clear view of Taylor's upper body to suggest resistance or compliance

---

[7] Defendants do not argue that slamming, pushing, or punching an arrestee's head or hitting them on the side with a knee constitute de minimis uses of force. *See Alicea v. Thomas*, 815 F.3d 283, 291 (7th Cir. 2016) (punching, kicking, and stomping a suspect who is face-down on the ground are unjustified uses of force if suspect is compliant).

12

one way or the other. At some points, the video shows movement in Taylor's legs, *see, e.g.*, [43] at 10:35:56–36:00, but a reasonable jury viewing the footage could attribute it to Coolidge's maneuvers rather than Taylor's voluntary movements.

If a jury finds that Deputy Coolidge slammed, pushed, punched, or hit Taylor after he had been subdued, then the jury could conclude that Coolidge used excessive force to arrest Taylor. Summary judgment on the excessive-force claim in favor of defendant Coolidge is inappropriate.

### 2. *Deputy Egan's Use of Force*

Taylor claims that Deputy Egan used excessive force by choking Taylor while pushing him into the glass wall. [42] ¶ 45. Defendants argue that the video footage does not show Deputy Egan "choking" Taylor or Egan's hands on Taylor's throat at any time. [39] at 6; [42] ¶ 65. Taylor says the video shows Deputy Egan "squeezing his neck from start to finish" despite Taylor's compliance. [51] ¶ 71. He argues that Egan's hand on the back of his neck "may not technically be called 'choking' in dictionary form, but it is a form of asphyxiation… [w]here pressure on the back of the neck restricts blood flow to brain by compressing." [51] ¶ 47.

Restricting a suspect's airways can be a deadly use of force. *See Abdullahi v. City of Madison*, 423 F.3d 763, 771 (7th Cir. 2005); *Est. of Phillips v. City of Milwaukee*, 123 F.3d 586, 593 (7th Cir. 1997) ("deadly force" involves "a substantial risk of causing death or serious bodily harm"). No reasonable jury could find that Deputy Egan applied lethal force to Taylor's neck. While the video footage does not clearly depict Deputy Coolidge's interaction on the ground with Taylor, the footage does show an unobstructed view after Deputy Egan lifts Taylor from the ground and

13

holds him against the adjacent glass wall. *See Pryor v. Corrigan*, 124 F.4th 475, 490 (7th Cir. 2024) (affirming trial court's reliance on parts of video footage where conduct was "plainly portrayed" and "unobstructed"). Deputy Egan kept his hand on the back of Taylor's neck for 15 seconds before releasing it and walking away. *See* [43] 10:36:57–37:12. Even accepting Taylor's characterization that Egan was "squeezing his neck," no reasonable jury could conclude from the video footage that Deputy Egan was cutting off Taylor's air supply. The video footage contradicts Taylor's claim of asphyxiation, so Taylor's testimony does not create a triable issue of fact.

Additionally, Taylor doesn't point to evidence suggesting that he could not breathe during or after the incident. He asserts that he "already suffers from seizures on a regular basis," [51] ¶¶ 47–49, but that evidence is improperly presented. It also wouldn't alter the analysis of whether Deputy Egan's actions were reasonably justified under the circumstances known to him at the time. *See Est. of Phillips*, 123 F.3d at 594 (question is not whether officers' actions "aggravated an undiscovered injury or condition, but whether their actions were objectively reasonable under the circumstances") & 595 (finding officers' failure to notice that arrestee "was not getting enough oxygen [did not], standing alone, transform [the] actions into a transgression of constitutional magnitude"). Summary judgment is granted in favor of defendant Egan on the excessive-force claim.

### B. Failure to Intervene

"An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know ... excessive force was being used and

14

the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Stewardson v. Biggs*, 43 F.4th 732, 736 (7th Cir. 2022).

Taylor brings a failure-to-intervene claim against defendants Egan, Coolidge, and Osorio. [3] ¶¶ 103–05. He asserts Deputy Coolidge failed to intervene when he witnessed Egan "swatting" his plastic bag and "making physical contact of an insulting and provoking nature" and when Egan choked Taylor. [51] ¶ 67. Taylor asserts that Deputy Egan failed to intervene during the 40-or-so seconds that Coolidge had Taylor on the ground. [51] ¶ 42. Taylor asserts that Deputy Osorio failed to intervene when Egan choked him. [42] ¶¶ 68–69.

Without an excessive-force claim against Deputy Egan, there can be no failure-to-intervene claim against Deputies Osorio and Coolidge. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) ("In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation."). Taylor doesn't bring an excessive-force claim against Deputy Egan for "swatting" Taylor's plastic bag; nor could he without any seizure. *See Graham*, 490 U.S. at 395 (the Fourth Amendment applies to claims that law enforcement officers used excessive force "in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen").

That leaves the failure-to-intervene claim against Deputy Egan for witnessing Coolidge's uses of force after the tackle and when Taylor was on the ground. Defendants assert that Deputy Egan's view was blocked by Coolidge while Egan was holding Taylor's legs from behind, so Egan could not see that Coolidge was punching,

15

hitting, or otherwise using excessive force against Taylor. [39] at 7. Even if Egan had reason to know Coolidge's uses of force, defendants argue there was no realistic opportunity to intervene because the punches and hits occurred in quick succession. [39] at 8. Taylor's only response on his failure-to-intervene claim against Egan is that "Egan watched what went on between Plaintiff and Defendant Coolidge for almost half the 40-plus second newly accused resisting accusation." [51] ¶ 66. That's not enough to rebut defendants' evidence or argument on the issue. *See Johnson v. Prentice*, 29 F.4th 895, 903 (7th Cir. 2022) ("Although we construe pro se filings liberally, pro se litigants are generally subject to the same waiver rules as those who are represented by counsel."). Summary judgment is granted in favor of all defendants on the failure-to-intervene claim.

### C. Battery

Taylor brings a state-law claim for battery against defendants Egan, Coolidge, and the Sheriff of DuPage County in his official capacity under a theory of *respondeat superior*. [3] ¶¶ 8, 106–08. Defendants assert that Deputies Egan and Coolidge used reasonable force at all times, and without any underlying tort, Sheriff James Mendrick cannot be held vicariously liable. [39] at 12–13 (citing 720 ILCS 5/7-5 (an officer is "justified in the use of any force which he reasonably believes, based on the totality of the circumstances, to be necessary to effect the arrest and of any force which he reasonably believes, based on the totality of the circumstances, to be necessary to defend himself or another from bodily harm while making the arrest")).

The Illinois Tort Immunity Act bars any claim premised on vicarious liability against the DuPage County Sheriff. *See* 745 ILCS 10/2-204 ("[A] public employee, as

16

such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person."); *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1044–46 (7th Cir. 1998) (neither § 1983 nor Illinois law permit claims based on vicarious liability against a County Sheriff, though Sheriff could be held liable for his own "willful and wanton" conduct). Taylor submits no evidence of the Sheriff's conduct. Summary judgment is granted in favor of Sheriff Mendrick.

The Act provides that an officer "is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. "Willful and wanton" is defined as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210. "While a defendant's conduct may be both 'unreasonable' and 'willful and wanton,' these words are not interchangeable." *Carter v. Chicago Police Officers*, 165 F.3d 1071, 1081 (7th Cir. 1998).

If a jury finds that Taylor was subdued and compliant when Deputy Coolidge slammed, pushed, punched, or hit Taylor on the ground, then a jury could also conclude that Coolidge's actions reflected a reckless disregard to Taylor's safety. *See Chelios v. Heavener*, 520 F.3d 678, 693 (7th Cir. 2008). Summary judgment on the battery claim is denied as to defendant Coolidge.

Taylor asserts that Deputy Egan committed battery when he "snatched" the plastic bag from his grip. *See* [51] at 298–99 (¶ 25). He argues that: "This was not a law enforcement officer doing his job. This was an aggressive and angry civilian

17

approaching another angry civilian. This is proven by the criminal charges of Plaintiff's misdemeanor plea deal… What Defendant Egan had done was committed a Battery upon Plaintiff. This is why it was completely omitted from both his and Defendant Coolidge's reports." [51] ¶ 28. Taylor's own version of events is that Deputy Egan's conduct was an "angry civilian approaching an angry civilian." That's not enough to suggest willful and wanton conduct when Deputy Egan was acting as an officer. Summary judgment is granted in favor of defendant Egan on the battery claim.

### D. Indemnification

Because disputed issues of material fact prohibit the resolution of Taylor's claim for excessive force against Deputy Coolidge, the indemnification claim against DuPage County remains pending. *See* 745 ILCS 10/9-102.

### E. Sanctions

Taylor moves for sanctions to hold defendants Egan, Coolidge, and Sheriff Mendrick in contempt for perjury. [56]. He raises five instances of alleged perjury: (1) Egan's and Coolidge's denial that they saw any other report or document before writing their incident reports despite substantially similar statements; (2) Egan's testimony that he did not throw Taylor's ripped paper in the air despite video footage; (3) Egan's lack of truthfulness in his testimony about his dismissal from Romeoville Police Department; (4) Egan's testimony that he did not touch Taylor's neck; and (5) inconsistencies between the video footage and defendants' answer to his amended complaint.

18

Perjury is "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Montano v. City of Chicago*, 535 F.3d 558, 564 (7th Cir. 2008). It only applies to statements "made under penalty of perjury." *Martin v. Redden*, 34 F.4th 564, 569 (7th Cir. 2022); *United States v. Dunnigan*, 507 U.S. 87, 94 (1993) (witness testimony is made "under oath or affirmation").

Deputy Egan's deposition testimony and Deputy Osorio's affidavit are the only sworn statements in the record. *See* [42-6]; [42-7]. There can be no claim of perjury against Sheriff Mendrick and Deputy Coolidge. Egan's and Coolidge's incident reports are not testimony. [51] at 309–10. Defendants' answer to Taylor's amended complaint are admissions, but they are not testimony. [12].

The inconsistencies that Taylor points to in Deputy Egan's testimony may "provide fertile ground for vigorous impeachment but do not support perjury findings." *Montano*, 535 F.3d at 564. Deputy Egan's recall of events may conflict with Taylor's memory and interpretation of the video footage, but that doesn't mean Egan falsely testified about his belief that Taylor was resisting arrest. *See* [56] at 9. Taylor's objections to Deputy Egan's record of "reporting deficiencies" or placement on the *Brady* List may go to Egan's credibility as a witness, but they do not support a finding of false testimony provided in this case. Taylor's motion for sanctions is denied.

V. **Conclusion**

Plaintiff's motion for sanctions, [56], is denied. Defendants' motion for summary judgment, [38], is granted in part, denied in part. Summary judgment is denied on the excessive-force and state-law battery claims against defendant Peter

19

Coolidge. The indemnification claim against DuPage County remains pending. Summary judgment is granted on the remaining claims in favor of defendants Anthony Egan, Rafael Osorio, and Sheriff James Mendrick. Plaintiff may proceed to trial against Deputy Coolidge only, limited to claims of excessive force and battery.

ENTER:

                                                Manish S. Shah
                                                United States District Judge

Date: August 5, 2025